Price, J.
The circuit court very properly reversed the judgment rendered against Harry L. *115 Laws by the court of common pleas. There was nothing in the petition, nor in any of the written instruments put in evidence, to warrant a judgment against him. In those written instruments bearing his name, he disclosed the name of his principal, signed her name as such and his own name as her agent. There is no evidence otherwise introduced that fixed any liability as to this agent. And we find in the record sound reasons why the judgment against the other defendant, now plaintiff in error, should also have been reversed.
While the case was nominally tried to a jury, it was disposed of by the rulings of the court excluding valuable testimony, and then directing a verdict for the plaintiffs on that which had been admitted. It seems to us that the trial court labored under a misconception of the contract between the parties, and that we may ascertain its meaning, we look to the written proposition placed in the hands of the plaintiffs below to guide them in their negotiations for a lease of the premises and which should become the basis of their compensation. This proposition appears in the statement of this case. It was addressed to Schmidt and Wade, the plaintiffs below, and delivered to them.
The offer was, to lease perpetually the property known as No. 512 Vine street, Cincinnati, twenty feet front by one hundred feet deep, at the rate of four thousand dollars per year, payable quarterly, she to pay all taxes due and payable June 20, 1903, and the lessees to pay all taxes and assessments thereafter. The lessees should have the privilege of purchase at the end of twenty years, for the sum of one hundred thousand dollars, by giving notice in writing sixty days before that date; the lessees *116 to assume the lease on the first and second floors expiring December 31, 1908, and to guarantee to erect a new, modern, first-class building, and as a further “guarantee” that such a building will be erected, the lessees were to deposit cash or securities in the sum of twenty thousand dollars with a certain bank in Cincinnati, and in case of a failure to erect such a building within six years, the funds so deposited should be delivered to Florence E. Laws, the owner; but on completion of said modern building, said funds should be returned to the lessees. The possession to be given July 1, 1903, and the lease to begin on that date. The proposition to be binding upon the payment of one thousand dollars in cash, to be credited on the first quarterly payment of .rent. This instrument bears date May 4, 1903.
Having thus defined her conditions of lease a.nd ultimate sale, and placed the same in the hands of Schmidt and Wade, real estate brokers, their right to commission or compensation was also put in writ'ing, addressed to them as follows: “Gentlemen: In case you make a léase of the property known as No: 512 Vine street, as per written proposition made you this date, I agree to pay you a commission of two per cent, on the privilege of purchase price. Florence E. Laws, by Harry L. Laws.”
On the 9th of May, 1903, the efforts of Schmidt and Wade were so far successful as to obtain from The Fleuck’s Opera House Company an acceptance of the foregoing proposition, which acceptance is as follows: “We accept the above proposition. The Heuck’s Opera House Company, per H. Heuck, Pres.” This company paid the thousand dollars required as the cash to be paid to make the proposi *117 tion binding; and the record informs us that Mr. Harry L. Laws, who acted for his sister, delivered the deed for the property to Mr. Wade, one of the agents, who desired to hand it to a certain attorney for examination of title and preparation of the lease. This is the limit in the history of the transaction, for the trial court shut out what occurred after that point, except that it does appear distinctly that no lease, was ever made. A representative of one of #these agents and who acted for him in the negotiations, says no written lease was made, and that “they did not get as far as drawing a lease.” The defendants below, on cross-examination of witnesses for the plaintiffs, endeavored to show why no lease was made. Mr. Heuck was asked on cross-examination: “Did The Heuck’s Opera House Company ever execute a lease of this property?” The court sustained plaintiff’s objection to the question, and the court said: “All the broker has to do is to bring the parties together, and if there is a failure, provided the broker did not contribute to the failure, he is entitled to his commission as a matter of law.”
Harry L. Laws, agent for his sister, was a witness, and testified that he tendered deed for property to the Opera House Company, and was asked if it accepted the deed, but the court ruled that he should not answer for the reason given in sustaining objection to previous question. He was asked further if the Opera House Company refused to accept a deed, but objection to the question was sustained. The court announced that “in my view of the law, it does not make any difference what occurred; whenever a broker has a property for sale and procures a purchaser, no matter what happens *118 after that, he has complied with the terms of his contract. I sustain the objection.”
Entertaining such firm convictions as to the meaning of the contract for commission, the court instructed a verdict for the plaintiffs. We cannot agree with the trial court on its construction of the contract. What the owner offered as first in order stated in the written proposition, was to lease the described premises perpetually. The lessees to have the privilege of purchase at the end of twenty years for one hundred thousand dollars. They were to put up a new, modern, first-class building, and to secure the erection of such a building within six years, they were required to deposit in a certain bank twenty thousand dollars in cash or securities, and in case of failure, the funds so deposited should go to Miss Laws, but if building should be completed, funds to go to the lessees. The scheme of the owner was to obtain a tenant on the terms specified and it was not a proposition of direct sale, but of a privilege of purchase at the end of twenty years at a specified price; but until that event occurred the party accepting the offer would be a tenant under a lease to be executed in due form. The offer starts out with the statement: “I will lease perpetually the property known as No. 512 Vine street, Cincinnati * * * at the rate of four thousand dollars per year, payable quarterly,” et cet. When the Opera House Company made and endorsed its acceptance on the proposition, it accepted the offer of a perpetual lease, and not a direct and simple offer to sell. Hence many authorities cited in brief for defendants in error fail, to be authority in this case. The agents did not secure a purchaser of the premises ready to take them on terms offered by the *119 owner, as instanced in many of the cases cited; nor were they commissioned to find a purchaser, but one who would take or enter into a lease on the terms defined in the written offer of the owner, and the acceptance covered the several things that were to be done during the running of the lease.
The petition filed in the* lower court sets out a copy of the written offer of a perpetual lease, and avers that the plaintiffs secured an afcceptance of the same on the 9th of May, 1903, and “that for their services in securing the lease of said property, defendants promised and agreed to pay to plaintiffs a sum of money equal to two per cent, upon the privilege of purchase price, namely, two thousand dollars.” It seems that our construction of the instrument is the pne entertained by the plaintiffs in their petition; — that they were to secure a lease, and not make a sale. This view stands out plainly in the language of their contract for compensation, which is not set out in the petition, but which is: “In case you make a lease of the propert3^ known as No. 512 Vine street, as per written proposition made you this date, I agree to pay you a commission of two” per cent, on the privilege of purchase price.” The name of the owner is signed by her agent.
Under such a contract, was it enough that the agents procure some one to endorse and sign an acceptance on the written offer, and neither do or offer to do anything further? Had they earned the commission according to this contract when they secured a party to merely accept the offer containing so many conditions ? In their petition they say they were to be paid the commission for securing a lease, and it is shown in the brief testimony *120 which the court admitted that they never secured a lease or tenant for the owner. After the acceptance was made the deed held by the owner was delivered through her agent, Harry L. Laws, to an attorney, for some purpose, for examination óf title and drafting of a lease, some witness stated, and when inquiry was made of witnesses as to why the deal failed, the court held that was immaterial and refused to hear it. No lease was procured or made, and the record does not disclose a single step taken by the Opera House Company after signing the acceptance, except the payment of the thousand dollars to bind the acceptance. There is nothing- said in the record about a deposit of twenty thousand dollars as a guaranty that the accepting company would erect the modern building specified in the proposition. There is no evidence that such deposit was made or tendered. This was to be a condition ih the lease.
Now in the presence of these facts, did the plaintiffs “make a lease of the property known as No. 512 Vine street,” et cetera? They did not, and yet that is the condition of the contract upon which they seek to recover. There is no claim that the plaintiff in error defaulted in any respect, and it is understood that she was anxious that the lease be obtained, but the court prevented the plaintiff in error from showing who was at fault for the failure to carry out the terms of the accepted proposition, on the ground that when the plaintiffs secured — not a lease, but an agreement to lease — they had done their whole duty under the contract of employment. Such a construction would enable agents to trifle with the rights and interests of their principal, and by procuring merely an acceptance of an offer to *121 lease, collect commission and leave the owner to perform the labor and work out the details for which they have been paid. They might prevent a lease by their fraudulent concealment or false representations. We are unwilling to adopt the theory-followed by the trial court and sanctioned by the circuit court. The terms of employment should not be enlarged and made to create a liability not contemplated in the contract. The fate of the thousand dollars paid with the acceptance can be determined according to the rights of the parties.
In our judgment, the court erred in excluding evidence offered by defendants, and also erred in directing a verdict for the plaintiffs.

Judgment reversed.

Crew, C. J., Summers, Spear, Davis and Si-iauck, JJ., concur.